20233mmunozpf

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ---------------------------------x

3    UNITED STATES OF AMERICA

4              v.                          23 CR 150(PMH)

5                                                   PLEA

6    ROMAN MUNOZ,

7              Defendant.

8    ---------------------------------x

9                                        United States Courthouse
                                         White Plains, N.Y.
10                                       March 22, 2023

11

12

13

14   Before:  THE HONORABLE PHILIP M. HALPERN, District Judge

15

16

17                        APPEARANCES

18   DAMIAN WILLIAMS
          United States Attorney for the
19        Southern District of New York
     JARED HOFFMAN
20   BENJAMIN KLEIN
          Assistant United States Attorneys
21

22
     FEDERAL DEFENDERS OF NEW YORK, INC.
23        Attorneys for Defendant
     BENJAMIN GOLD
24

25   Also Present:  PETER ANDERSON, Spanish Interpreter
```

20233mmunozpf

1        THE DEPUTY CLERK:  United States of America against

2   Roman Munoz.

3        Would the government please note your appearance for

4   the record.

5        MR. HOFFMAN:  Good morning, your Honor.  Jared

6   Hoffman and Benjamin Klein for the United States.

7        THE DEPUTY CLERK:  Defense counsel, please note your

8   appearance.

9        MR. GOLD:  Good morning, your Honor.  On behalf of

10  Roman Munoz, Ben Gold from the Federal Defenders.

11       THE COURT:  All right.  Good morning.

12       THE DEPUTY CLERK:  Would the staff interpreter please

13  state your name.

14       THE INTERPRETER:  Yes.

15       Good morning, your Honor.  Peter Anderson

16       THE COURT:  Good morning, Mr. Anderson.

17       Good morning, Christina.

18       All right, everybody, please be seated.

19       Mr. Hoffman, welcome.  I understand you're the new

20  guy.  I'm kind of the new guy, too, so we'll be new guys

21  together.

22       MR. HOFFMAN:  Sounds good.

23       THE COURT:  You worked for one of my heroes, so I'm

24  sure you're well prepared.

25       All right.  I'm going to enter a written order, 5(f)

20233mmunozpf

1    order.  I don't believe one has been entered yet.  Correct?

2              MR. HOFFMAN:  That's correct, your Honor.

3              THE COURT:  I'm going to sign the order now and I'll

4    give you an oral warning as well.

5              In accordance with Federal Rule of Criminal Procedure

6    5(f), I direct the prosecution to comply with its obligation

7    under Brady against Maryland and its progeny to disclose to the

8    defense all information, whether admissible or not, that is

9    favorable to the defendant, material either to guilt or to

10   punishment and known to the prosecution.  Possible consequences

11   for non-compliance may include dismissal of individual charges

12   or the entire case, exclusion of evidence and professional

13   discipline or court sanctions on the attorneys responsible.

14             I direct the prosecution to review and comply with

15   the written orders which more fully describe this obligation

16   and the possible consequences of failing to meet them.

17             Does the prosecution confirm that it understands its

18   obligations and will fulfill them?

19             MR. HOFFMAN:  Yes, your Honor.

20             THE COURT:  All right.  Thank you.

21             Mr. Gold, do I understand correctly that once we get

22   through the waiver of indictment and arraignment, your client

23   is prepared to enter a guilty plea today to a lesser-included

24   charge contained in the information?

25             MR. GOLD:  Yes, your Honor.

20233mmunozpf

```
 1                 THE COURT:  All right.

 2                 Mr. Gold, does your client have a copy of the

 3     information?  And how was it provided to him?

 4                 MR. GOLD:  He does have a copy of the information.  I

 5     brought it to him at the jail and with me was an interpreter

 6     employed by my office and we reviewed it together.  I'm

 7     satisfied that he understands the contents of the allegation,

 8     and we waive a public reading.

 9                 THE COURT:  All right.  And you explained in detail

10     the charge to him when you met with him, correct?

11                 MR. GOLD:  I did.  And we discussed the charges and

12     what he knew about the charges on multiple occasions.

13                 THE COURT:  All right.

14                 Mr. Munoz, the document that contains the charge to

15     which you've indicated you wish to plead guilty is called an

16     information and has been issued by the United States Attorney.

17     Have you received a copy of the information?

18                 THE DEFENDANT:  Yes.

19                 THE COURT:  Have you reviewed it and discussed it

20     with your attorney, Mr. Gold?

21                 THE DEFENDANT:  Yes.

22                 THE COURT:  Because the crime charged in the

23     information is a felony, you have a constitutional right to

24     require the government to present evidence to a grand jury to

25     see whether the grand jury would vote to charge you with that
```

20233mmunozpf

1  crime.  Do you understand that right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  A grand jury is a group of at least 16,

4  but not more than 23 citizens.  Before you could be indicted,

5  at least 12 of them would have to agree that there was probable

6  cause to believe that a crime was committed and that you

7  committed the crime.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  If the grand jury voted to charge you,

10  the document they would issue would be called an indictment.

11  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you wish to give up your right to have

14  your case presented to the grand jury?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Did you discuss that with Mr. Gold before

17  you decided to give up that right?

18              THE DEFENDANT:  Yes.

19              THE COURT:  I have before me a document entitled

20  waiver of indictment.  Immediately above the typewritten words

21  "Roman Munoz, defendant" is a signature.  Is that your

22  signature?

23              THE DEFENDANT:  Yes.

24              THE COURT:  I notice Mr. Gold also signed on your

25  behalf.  Did you ask Mr. Gold to sign on your behalf as well?

20233mmunozpf

1          THE DEFENDANT:  Yes.

2          THE COURT:  Before you signed the waiver of

3   indictment, did you discuss it with your attorney?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you sign it voluntarily?

6          THE DEFENDANT:  Yes, that's correct.

7          THE COURT:  When you signed this waiver of

8   indictment, did you understand you were giving up your right to

9   be indicted by a grand jury?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did anyone threaten you or force you to

12   sign the waiver?

13          THE DEFENDANT:  No.

14          THE COURT:  We'll mark the waiver as Court Exhibit 1.

15          I find that Mr. Munoz has knowingly and voluntarily

16   waived his right to be indicted by a grand jury.  The

17   information will be accepted for filing.

18          Now we'll arraign Mr. Munoz on the information.

19          Mr. Munoz, you've already indicated to me that you

20   received a copy of the information we've been discussing and

21   read it and reviewed it with your attorney, Mr. Gold; is that

22   correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you waive a public reading of the

25   information or do you want me to read it to you?

20233mmunozpf

1          THE DEFENDANT:  I don't know what would be best.  No.

2          THE COURT:  All right.

3          Mr. Munoz, as to the charge in the information, at

4   this juncture, how do you plead, guilty or not guilty?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Not yet.

7          MR. GOLD:  At this point, your Honor, with your

8   permission, I would ask to be permitted to enter a not guilty

9   plea for Mr. Munoz with the understanding that we will be able

10  to change that plea momentarily.

11         THE COURT:  Yes, I'll accept your representation.

12         At this juncture, Mr. Munoz, you're going to plead as

13  to the information guilty or not guilty.

14         THE DEFENDANT:  Guilty.

15         THE COURT:  Okay.  We'll wait a minute.

16         (Counsel conferred with the defendant)

17         MR. GOLD:  Your Honor, if you don't mind, could you

18  ask him once more.

19         THE COURT:  Yes.  We'll try one more time.

20         As to the charge in the information, at this

21  juncture, Mr. Munoz, how do you plead, guilty or not guilty?

22         THE DEFENDANT:  Not.

23         THE COURT:  Okay.  The clerk, then, will enter a not

24  guilty plea for Mr. Munoz.

25         Now, Mr. Gold, does your client have an application

20233mmunozpf

1  with respect to that tenuous not guilty plea?

2          MR. GOLD:  Yes.  Thank you, your Honor.  At this

3  moment, Mr. Munoz would request permission to enter a plea of

4  guilty pursuant to a plea agreement which is dated February

5  2nd, which I believe your Honor has a copy of.

6          THE COURT:  All right.

7          Mr. Munoz, as you've heard, I've been informed that

8  you wish to plead guilty to Count One of the information.  Is

9  that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  With respect to Count One, I understand

12  you intend to plead guilty to the lesser-included offense of

13  conspiracy to distribute and possess with intent to distribute

14  5 grams and more of methamphetamine, its salts, isomeres and

15  salts of its isomeres and 40 grams and more of mixtures and

16  substances containing a detectable amount of fentanyl, in

17  violation of Title 21, United States Code, Section

18  841(b)(1)(B).

19          Before I can accept your guilty plea, I'm going to

20  need to ask you certain questions.  It's very important to me

21  that you answer these questions honestly and completely.  I'm

22  doing this so I can make sure you understand your rights.  I

23  also want to make sure you're pleading guilty voluntarily and

24  of your own free will and that you're pleading guilty because

25  in fact you are guilty and not for some other reason and that

20233mmunozpf

1   you fully understand the consequences of your plea.

2            If at any point you don't understand my questions or

3   you want to speak to your lawyer, Mr. Gold, please speak up,

4   because it's very important to me that you understand each and

5   every question before you answer it.  Will you do that, please?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.

8            At this time, I'm going to ask Mr. Cangelosi to place

9   you under oath.

10           (Defendant Roman Munoz sworn)

11           THE COURT:  All right.  You may be seated.

12           Mr. Munoz, you're now under oath.  That means if you

13  answer any of my questions falsely, you could later be

14  prosecuted for perjury or making a false statement.  Do you

15  understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  How old are you?

18           THE DEFENDANT:  I'm 65.

19           THE COURT:  Give me your full name, please.

20           THE DEFENDANT:  Roman Munoz.

21           THE COURT:  How far did you go in school, Mr. Munoz?

22           THE DEFENDANT:  I completed sixth grade at school in

23  Mexico.

24           THE COURT:  Are you currently or have you recently

25  been under the care of a doctor or psychiatrist for any reason?

20233mmunozpf

1     THE DEFENDANT:  Yes.  I'm seeing a doctor.

2     THE COURT:  What are you seeing a doctor for?

3     THE DEFENDANT:  It's because of my arm and the blood

4  pressure pills that I'm taking that are given to me at the

5  prison.

6     THE COURT:  All right.  What happened to your arm?

7     THE DEFENDANT:  I had an accident in the bathroom.

8     THE COURT:  Did you break your arm?

9     THE DEFENDANT:  Yes.

10     THE COURT:  All right.

11     Do the blood pressure pills, the medicine you're

12  taking, interfere in any way with your ability to understand

13  what is going on here today or your ability to answer my

14  questions truthfully?

15     THE DEFENDANT:  No.

16     THE COURT:  Have you ever been treated or

17  hospitalized for any mental illness or mental-health problems?

18     THE DEFENDANT:  No.

19     THE COURT:  Have you ever been treated or

20  hospitalized for any drug or alcohol abuse or addiction?

21     THE DEFENDANT:  No.

22     THE COURT:  Other than your blood pressure medicine,

23  have you taken any drugs, medicine or pills in the last 24

24  hours?

25     THE DEFENDANT:  I did so yesterday.

20233mmunozpf

```
 1              THE COURT:  What did you take yesterday?
 2              THE DEFENDANT:  I took a blood pressure pill and one
 3    for potassium.
 4              THE COURT:  Okay.  A potassium pill?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  And the potassium pill doesn't interfere
 7    with your ability to understand what's going on here today or
 8    to answer my questions truthfully, does it?
 9              THE DEFENDANT:  No.
10              THE COURT:  Have you consumed any alcohol in the last
11    24 hours?
12              THE DEFENDANT:  No.
13              THE COURT:  Is your mind clear today, Mr. Munoz?
14              THE DEFENDANT:  I'm a bit nervous.
15              THE COURT:  No, but is your mind clear?  Do you
16    understand what is happening here today?
17              THE DEFENDANT:  Yes.
18              THE COURT:  I would be nervous, too, if I were you.
19    Being nervous is okay.  But being nervous isn't interfering
20    with your ability to understand what I'm doing today and your
21    ability to answer my questions honestly, right?
22              THE DEFENDANT:  No.
23              THE COURT:  Have you had enough time and opportunity
24    to discuss your case with Mr. Gold?
25              THE DEFENDANT:  Yes.
```

20233mmunozpf

1          THE COURT:  Have you discussed with him the charges

2     against you, including any possible defenses that you might

3     have?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you discussed with him the

6     consequences of entering a plea of guilty?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you satisfied with Mr. Gold's

9     representation of you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Counsel, do either of you have any doubt

12     as to Mr. Munoz' competence to enter a plea of guilty at this

13     time?

14          MR. HOFFMAN:  No, your Honor.

15          MR. GOLD:  And I do not, your Honor.

16          THE COURT:  All right.  Based on Mr. Munoz' responses

17     to my questions and my observations of his demeanor, I find

18     that he's fully competent to enter an informed guilty plea at

19     this time.

20          Mr. Munoz, I'm now going to explain to you certain

21     rights that you have under the Constitution and the laws of the

22     United States.  These are the rights you'll be giving up if you

23     enter a plea of guilty.

24          Again, please tell me if there's anything at all you

25     don't understand and either I or your attorney, Mr. Gold, will

20233mmunozpf

1    explain the matter more fully.

2            You have the right to plead ^not guilty to the charge

3    contained in the information or persist in your previously

4    entered plea of not guilty.  Do you understand that right?

5            THE DEFENDANT:  Yes.

6            THE COURT:  If you plead not guilty, you have the

7    right to a speedy and public trial by an impartial jury on the

8    charge contained in the information.  Do you understand that

9    right?

10           THE DEFENDANT:  Yes.

11           THE COURT:  At that trial, you would be presumed to

12   be innocent and the government would be required to prove you

13   guilty by competent evidence beyond a reasonable doubt before

14   you could be found guilty.  That means you would not have to

15   prove that you were innocent.  Do you understand that right?

16           THE DEFENDANT:  Yes.

17           THE COURT:  If there were a jury trial, you could not

18   be convicted unless a jury of 12 people unanimously agreed that

19   you were guilty beyond a reasonable doubt.  Do you understand

20   that right?

21           THE DEFENDANT:  Yes.

22           THE COURT:  At that trial and at every other stage of

23   the case, you would have the right to be represented by an

24   attorney, and if you could not afford an attorney, the Court

25   would appoint an attorney to represent you.  Do you understand

20233mmunozpf

1    that right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  During a trial, the witnesses for the

4    government would have to come to court and testify in your

5    presence and your lawyer could confront and cross-examine those

6    witnesses and object to evidence offered by the government.  Do

7    you understand all of that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  At that trial, your lawyer could also

10   offer evidence on your behalf and you would have the right to

11   use subpoenae to compel witnesses to testify and to obtain

12   evidence to be offered in your defense.  Do you understand all

13   of that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  At that trial, you would have the right

16   to testify if you chose to do so, but you would also have the

17   right not to testify.  If you chose not to testify, that could

18   not be used against you in any way.  No inference or suggestion

19   of guilt could be drawn from the fact that you did not testify.

20   Do you understand all of that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  If you were convicted at a trial, you

23   would have the right to appeal that verdict to a higher court.

24   Do you understand that right?

25             THE DEFENDANT:  Yes.

20233mmunozpf

1        THE COURT:  And do you also understand that, even

2    now, you have the right to change your mind, persist in your

3    not guilty plea and go to trial?

4        THE DEFENDANT:  Yes.

5        THE COURT:  But if you do plead guilty and if I

6    accept your plea, you'll be giving up your right to a trial and

7    all the other rights that go with it that I've just described,

8    other than your right to an attorney.  If you plead guilty,

9    there will be no trial and I'll enter a judgment and sentence

10   you on the basis of your guilty plea after considering a

11   presentence report prepared by the Probation Department and

12   after considering any submissions I get from you, your attorney

13   and the government.  Do you understand all of that?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Finally, if you do plead guilty, you will

16   also be giving up your right not to incriminate yourself and

17   I'm going to ask you some questions about what you did this

18   morning in order to satisfy myself that you are in fact guilty

19   as charged.  Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Mr. Munoz, do you understand that the

22   government is willing to accept a guilty plea from you to the

23   lesser-included offense of conspiracy to distribute and

24   possession with intent to distribute 5 grams and more of

25   methamphetamine, its salts, isomers and salts of its isomers

20233mmunozpf

and 40 grams and more of mixtures and substances containing a

detectable amount of fentanyl, in violation of 21, United

States Code, Section 841(b)(1)(B)?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Hoffman, what are the

essential elements of the lesser-included offense, please,

charged in Count One?

MR. HOFFMAN:  The elements of the offense are as

follows:

First, that two or more persons agreed to violate the

federal drug laws;

Second, that the defendant knowingly and voluntarily

entered into the conspiracy; and,

Third, that the objective of the conspiracy was to

distribute, one, 5 grams and more of methamphetamine, its

salts, isomeres and salts of its isomeres and, two, 40 grams

and more of mixtures and substances containing a detectable

amount of fentanyl.

The defendant in this case was arrested in Orange

County, so venue is proper in this district.

THE COURT:  Thank you, Mr. Hoffman.

Mr. Munoz, do you understand that if you do not plead

guilty to the lesser-included offense in Count One of the

information, that the government would have to prove each and

every element of that charge as described by Assistant United

1    States Attorney Hoffman beyond a reasonable doubt and at a

2    trial?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I'm now going to tell you about the

5    maximum possible penalties for this offense.

6              As to the lesser-included offense in Count One, the

7    maximum possible penalty is a term of imprisonment of 40 years

8    followed by a lifetime term of supervised release plus a

9    maximum fine of the greatest of $5 million or twice the gross

10   pecuniary gain derived from the offense or twice the gross

11   pecuniary loss to persons other than yourself resulting from

12   the offense plus a mandatory special assessment of $100.  Do

13   you understand that these are the maximum possible penalties

14   for this offense?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you further understand that the crime

17   to which you're pleading guilty not only has a maximum penalty,

18   but it also carries a mandatory minimum term of imprisonment

19   and a mandatory minimum term of supervised release?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Specifically, the lesser-included offense

22   in Count One carries a mandatory minimum term of five years of

23   imprisonment and a mandatory minimum term of four years of

24   supervised release.  That means, even if I wanted to, I would

25   not be allowed to sentence you to less than the mandatory

20233mmunozpf

minimum term of imprisonment and supervised release.  Do you

understand that?

THE DEFENDANT:  Yes.

THE COURT:  In this case, even though there is a

mandatory minimum sentence of five years, you could be

sentenced below the mandatory minimum under the so-called

safety-valve statute if you comply with certain conditions.

You're eligible for that kind of treatment only if certain

facts apply to your case.  It's up to me to decide whether they

do apply and I can't make that decision about that until the

time of sentence.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  As part of your sentence, I can also

order you to pay restitution to any person or entity injured as

a direct result of your criminal conduct.  Do you understand

that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Hoffman, is there a case here for

restitution?

MR. HOFFMAN:  No, your Honor.

THE COURT:  All right.

Mr. Munoz, I mentioned supervised release a moment

ago.  Supervised release means that if I sentence you to prison

to be followed by a term of supervised release, you would be

subject to supervision by the Probation Department after you

20233mmunozpf

```
1    are released.  If you violated any of the conditions of
2    supervised release, the term of supervised release could be
3    revoked and you could be returned to prison without a jury
4    trial to serve additional time even beyond your original
5    sentence.  If that happened, you would not be given credit for
6    the time served in prison on your original sentence or for any
7    time spent on supervised release.  Do you understand that?
8                  THE DEFENDANT:  Yes.
9                  THE COURT:  You should also understand that parole
10   has been abolished in the federal system, so if you are
11   sentenced to prison, you will not be released early on parole.
12   Do you understand that?
13                 THE DEFENDANT:  Yes.
14                 THE COURT:  Mr. Munoz, are you a citizen of the
15   United States?
16                 THE DEFENDANT:  Yes.
17                 THE COURT:  Do you further understand that if I
18   accept your guilty plea and adjudge you guilty, that
19   adjudication may deprive you of valuable civil rights, such as
20   the right to vote, the right to hold public office, the right
21   to serve on a jury, the right to possess any kind of firearm,
22   and the right to hold certain professional licenses?
23                 THE DEFENDANT:  Yes.
24                 THE COURT:  Have you talked to your attorney,
25   Mr. Munoz, about how the Federal Sentencing Guidelines apply to
```

20233mmunozpf

 1    your case?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  In determining a sentence, I'm required

 4    to consider the guidelines, which are a set of rules and

 5    regulations for determining an appropriate sentence.  I have to

 6    calculate the applicable sentencing guideline range, consider

 7    that range, and determine whether there should be an upward or

 8    downward departure from that range.  In addition, I'm required

 9    to consider the Section 3553(a) factors set forth in Title 18

10    of the United States Code and to impose a sentence I believe

11    best satisfies the purposes of the criminal law even if that

12    sentence is higher or lower than what the guidelines recommend.

13    Do you understand that?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you also understand that I will not be

16    able to determine how the guidelines apply to your case until

17    after a presentence report has been prepared by the Probation

18    Office and both you and the government have had a chance to

19    review, comment on and object to anything in that report?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Do you also understand that if your

22    attorney or anyone else has attempted to predict what your

23    sentence will be, that prediction could be wrong?

24              THE DEFENDANT:  Yes.

25              THE COURT:  I'm telling you this because you need to

1    understand that no one, not your attorney or the government's

2    attorney, can be sure right now what your sentence will be.

3    It's my job to decide what your sentence will be and I'm not

4    going to do that right now.  Instead, I'm going to wait until

5    after the presentence report is completed and I've ruled on any

6    challenges to the report, calculated the guidelines range,

7    considered the Section 3553(a) factors and determined whether

8    there are any grounds to depart from the guidelines range.  So,

9    at this point, no one can predict what your sentence will be in

10   this case.  Do you understand that?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Do you also understand that even if your

13   sentence is different from what your attorney or anyone else

14   told you that it might be or if it's different from what you

15   expect it to be or from what's contained in your plea

16   agreement, once you plead guilty, I will not let you withdraw

17   your guilty plea?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Mr. Munoz, has anyone threatened you or

20   coerced you in any way or tried to force you to plead guilty?

21              THE DEFENDANT:  No.

22              THE COURT:  Has anyone other than the prosecution

23   promised you anything or offered you anything in order to get

24   you to plead guilty?

25              THE DEFENDANT:  No.

20233mmunozpf

1          THE COURT:  I've been given a letter dated February

2   2nd, 2023 from the government's attorney to your attorney,

3   which is the plea agreement between you and the government.

4          Mr. Cangelosi, we'll mark the plea agreement as Court

5   Exhibit 2.

6          I want to verify the signatures on page 7, Mr. Munoz.

7   Right above the words, typed words, "Roman Munoz" and below the

8   typed words "agreed and consented to" is a signature.  Is that

9   your signature?

10          THE DEFENDANT:  Yes.

11          THE COURT:  I notice Mr. Gold has also signed on your

12   behalf as well.  Did you authorize Mr. Gold to sign this plea

13   agreement?

14          THE DEFENDANT:  Yes.

15          MR. GOLD:  Your Honor, if I could.  Sorry to

16   interrupt, but I think it might be helpful for me to let the

17   Court know that I went to the jail with this agreement and with

18   a Spanish interpreter from my office, and that interpreter

19   also, before we went, translated the entire agreement into

20   Spanish, so Mr. Munoz has seen and read this in Spanish and

21   we've discussed it.  That interpreter is not here today, which

22   is why, on the line Spanish-language interpreter, no one

23   signed, but I can tell the Court that an interpreter from my

24   office both translated the entire letter dated February 2nd,

25   the entire plea agreement, and that we gave that to Mr. Munoz,

20233mmunozpf

1   and that I went to the jail with that interpreter and discussed

2   it with Mr. Munoz.

3           THE COURT:  Mr. Munoz, did you hear what Mr. Gold

4   said?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Have you read and reviewed a translated

7   copy of the plea agreement, what I've marked as Court Exhibit

8   2?

9           THE DEFENDANT:  Yes, that's correct.

10           THE COURT:  And did you read that translated version

11   before you signed the English version?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Did you discuss the plea agreement with

14   your attorney before you signed it?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Did you discuss every aspect of the plea

17   agreement with Mr. Gold before you signed it?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Did you understand the agreement at the

20   time you signed it?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Is the plea agreement the entire

23   agreement between you and the government?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Is there any other agreement, promise or

20233mmunozpf

1    understanding between you and the government that's been left

2    out of this agreement?

3              THE DEFENDANT:  No.

4              THE COURT:  Did anyone threaten or coerce or force

5    you to enter into the plea agreement?

6              THE DEFENDANT:  No.

7              THE COURT:  Other than what's contained in the plea

8    agreement, has anyone promised you anything or offered you any

9    inducement to plead guilty or enter into this plea agreement?

10             THE DEFENDANT:  No.

11             THE COURT:  Has anyone made a promise to you as to

12   what your sentence will be?

13             THE DEFENDANT:  No.

14             THE COURT:  I think, Mr. Gold, for the sake of

15   completeness, what I would ask you to do is ask the interpreter

16   to simply sign a copy of this and forward it to me with his

17   sworn statement, or her sworn statement, that she, in fact,

18   translated the entirety of Court Exhibit 2 and presented the

19   entirety of it to Mr. Munoz as you indicated.  All right?

20             MR. GOLD:  Yes.  I'll try to get that to you tomorrow

21   if that's okay.

22             THE COURT:  No problem.

23             MR. GOLD:  Thank you, your Honor.

24             THE COURT:  Just for the sake of completeness, I

25   think that's appropriate because I don't want to have a slip

1    between what's in English and what's in Spanish and that will

2    eliminate that possibility.

3                    MR. GOLD:  Understood.

4                    THE COURT:  All right.  Thank you.

5                    Mr. Munoz, it appears that you and the government

6    have stipulated to, meaning agreed to, the appropriate

7    calculation of your sentencing range under the guidelines.  Is

8    that your understanding?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  According to the stipulation, your

11   guidelines range is 135 to 168 months of imprisonment.

12                   Do you understand that the guidelines stipulation in

13   the plea agreement is binding on you and it's binding on the

14   government, but it is not binding on me?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  Do you also understand that, regardless

17   of what you and the government have agreed to, I'm going to

18   make my own determination of your guidelines range?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Do you also understand that, under

21   certain circumstances, both you and the government have the

22   right to appeal any sentence that I might impose, subject, of

23   course, to the terms of the plea agreement?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  There appears to be what the lawyers call

20233mmunozpf

1   an appeal waiver on pages 4 and 5 of the plea agreement.

2          Do you understand that, under the plea agreement,

3   you're giving up your right to appeal or otherwise challenge

4   your sentence so long as I sentence you at or below the

5   stipulated guidelines range of 135 to 168 months of

6   imprisonment?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Hoffman, is there a civil forfeiture

9   here?  I think there is.

10          MR. HOFFMAN:  He agrees to the forfeiture

11   allegations.

12          THE COURT:  Right.  In an amount yet to be

13   determined, correct?

14          MR. HOFFMAN:  That's correct.

15          THE COURT:  And we'll do that well before sentencing,

16   correct?

17          MR. HOFFMAN:  Yes, your Honor.

18          THE COURT:  All right.  Good.  Thank you.

19          Mr. Munoz, did you discuss this forfeiture provision

20   with your attorney?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you admit the forfeiture allegations

23   with respect to Count One of the information and agree to

24   forfeit to the United States, pursuant to Title 21, United

25   States Code, Section 853, a sum of money in an amount to be

20233mmunozpf

```
1    determined, representing proceeds traceable to the commission
2    of the charge in Count One of the information?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Mr. Munoz, do you understand what
5    forfeiture means?
6                THE DEFENDANT:  Yes.
7                THE COURT:  Forfeiture means you're giving something
8    up.  Under this section of the plea agreement, you're
9    consenting to give up a money judgment against you in an amount
10   to be determined, which represents the amount of proceeds
11   traceable to this offense.  Do you understand that?
12               THE DEFENDANT:  Yes.
13               THE COURT:  Do you also understand that, at an
14   appropriate time, you'll be signing and agreeing to a money
15   judgment whereby a judgment will be entered against you in a
16   sum certain?
17               THE DEFENDANT:  Yes.
18               THE COURT:  Have you clearly understood, Mr. Munoz,
19   everything that's happened here so far today?
20               THE DEFENDANT:  Yes.
21               THE COURT:  Now that you've been advised of the
22   charge against you, the possible penalties that you face and
23   the rights you're giving up, is it still your intention to
24   plead guilty to the lesser-included offense in Count One of
25   this information?
```

20233mmunozpf

1          THE DEFENDANT:  Yes.

2          THE COURT:  With respect to the lesser-included

3   offense in Count One of the information, how do you plead,

4   Mr. Munoz, guilty or not guilty?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Are you in fact guilty?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you pleading guilty voluntarily and

9   of your own free will?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Hoffman, would you please summarize

12   what the government would expect to prove if this matter went

13   to trial.

14          MR. HOFFMAN:  Yes, your Honor.

15          If this case were to proceed to trial, the government

16   would prove beyond a reasonable doubt that the defendant

17   conspired with others to distribute, one, 5 grams and more of

18   methamphetamine, its salts, isomeres and salts of its isomeres

19   and, two, 40 grams and more of mixtures and substances

20   containing a detectable amount of fentanyl.

21          The government's proof would include, among other

22   things, testimony from a confidential informant working with

23   the DEA about arranging to purchase a substantial quantity of

24   narcotics, including methamphetamine, and meeting the defendant

25   at a farm in Pine Island to complete the sale; recordings

20233mmunozpf

1   relating to the transaction, including a recording of the CI

2   meeting with the defendant to purchase narcotics; law

3   enforcement testimony regarding a search of the truck the

4   defendant was driving which recovered fake buy money given to

5   the CI and additional narcotics; physical evidence, including

6   narcotics the CI purchased from the defendant and recovered

7   from his truck; lab tests showing that these narcotics were

8   approximately 13 kilos of methamphetamine and approximately 1

9   kilo of fentanyl; and the defendant's Mirandized postarrest

10   statement admitting that he and another individual were being

11   paid for transporting the narcotics to New York.

12         THE COURT:  Thank you for that, Mr. Hoffman.

13         Mr. Munoz, did you hear what Assistant United States

14   Attorney Hoffman just said?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Is what he said substantially accurate?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  Would you please now tell me

19   in your own words what you did to make you believe that you are

20   guilty of this charge.

21         THE DEFENDANT:  Okay.  The month of April and May of

22   last year, I was part of transporting drugs to New York.  I

23   knew there were drugs in there because I was being paid for it,

24   but I did not know what kind of drugs they were.  And I'm very

25   sorry for that now.

20233mmunozpf

1          THE COURT:  Is that it?  Okay.

2          Let's just try to add a few facts to this.

3          You were driving the truck from where?  Pennsylvania

4    to New York?

5          THE DEFENDANT:  No.  From Arizona to New York.

6          THE COURT:  Arizona.  Okay.

7          And it was a Volvo truck as I understand it.

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And it was a long truck, like

10   50-something feet long, right?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  And was your co-conspirator,

13   Mr. Fernandez, with you?

14         THE DEFENDANT:  Yes.

15         THE COURT:  How long did it take you to get from

16   Arizona to New York?

17         THE DEFENDANT:  Two nights and two days.

18         THE COURT:  All right.  And along the way, you and he

19   understood that you had drugs in the back of the truck and that

20   your job was to transport these drugs to New York, right?

21         THE DEFENDANT:  That's correct.

22         THE COURT:  And when they got to New York, you were

23   going to sell the drugs to an individual?

24         THE DEFENDANT:  We were going to deliver it.

25         THE COURT:  You were going to deliver them to a --

20233mmunozpf

1   okay.  I get it.

2           Did you know how much drugs were in the truck,

3   quantity?

4           THE DEFENDANT:  No.  I did not know how much weight

5   it was.  There were 30 packages, but I didn't know how much

6   they weighed.

7           THE COURT:  And the packages contained

8   methamphetamine and fentanyl, right?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  And so your job was to

11  deliver these drugs to a location here in the Southern District

12  of New York, right?

13          THE DEFENDANT:  Correct.

14          THE COURT:  All right.  And on the day you delivered

15  the drugs, you delivered the drugs and accepted a backpack

16  which contained money, or what you thought was money, right?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And you took the money out of the

19  backpack and put it in the truck or put the backpack with the

20  money in the truck?

21          THE DEFENDANT:  I put the backpack into the truck.

22          THE COURT:  And did you take the $10,000 that you and

23  Mr. Fernandez were getting for it out of the backpack?

24          THE DEFENDANT:  No.

25          THE COURT:  Okay.  But the deal was you would get

20233mmunozpf

1    $10,000, $5,000 each, for this work?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Gold, we have no venue issue here,

4    correct?

5              MR. GOLD:  We do not.

6              THE COURT:  Mr. Munoz, did you know, at the time you

7    were doing all of this, that it was wrong?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And against the law?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Did anyone threaten or coerce or force

12   you to do any of these things?

13             THE DEFENDANT:  No.

14             THE COURT:  Are there any additional questions,

15   counsel, either of you would like me to ask at this time?

16             Mr. Hoffman?

17             MR. HOFFMAN:  No, your Honor.

18             THE COURT:  Mr. Gold?

19             MR. GOLD:  No.  Thank you, your Honor.

20             THE COURT:  Mr. Hoffman, do you believe there's a

21   sufficient factual predicate for a guilty plea at this time?

22             MR. HOFFMAN:  Yes, your Honor.

23             THE COURT:  Mr. Gold, do you agree?

24             MR. GOLD:  Yes.

25             THE COURT:  Mr. Gold, do you know of any valid

1    defense that would prevail at trial or any reason why your

2    client should not be permitted to plead guilty at this time?

3            MR. GOLD:  I do not.

4            THE COURT:  Based, then, on the defendant's responses

5    to my questions and my observations of his demeanor, I find

6    that he understands his rights and is waiving them knowingly

7    and voluntarily with an understanding of the consequences of

8    his guilty plea, including the potential sentence that may be

9    imposed.  I find further that the guilty plea is voluntary and

10   did not result from force, threats or promises other than

11   promises in the plea agreement, that the defendant has admitted

12   he is guilty as charged of the lesser-included offense in Count

13   One of the information, and that the plea is supported by an

14   independent factual basis for each and every element of the

15   crime charged.  Accordingly, I accept the guilty plea and I

16   adjudge Mr. Munoz guilty on the charge in the lesser-included

17   offense contained in Count One of the information.

18           I'm going to direct that the Probation Department

19   conduct a presentence investigation and prepare a presentence

20   report.

21           Mr. Munoz, you'll be interviewed by a probation

22   officer as part of this process.  Your lawyer, Mr. Gold, will

23   be with you during that interview.  Please make sure that

24   anything you say to the probation officer is truthful and

25   accurate.  I want you to know that that presentence report is

20233mmunozpf

1  very important to me in deciding what sentence to impose on

2  you, so it's important that you read the report carefully and

3  discuss it with Mr. Gold before your sentencing date.  If there

4  are any mistakes in that report, tell Mr. Gold about them so

5  that he can bring them to my attention before I impose

6  sentence.  Also, both you and Mr. Gold will have the right to

7  speak on your behalf before I impose sentence.

8          I see we preselected a sentencing date of August 17

9  at 3 p.m., subject to counsel's availability.

10         MR. HOFFMAN:  That works for the government.

11         MR. GOLD:  If I could just quickly open up a

12  calendar.  I apologize.

13         THE COURT:  Don't apologize.  We used to look in our

14  day-timers.  That went faster.

15         MR. GOLD:  It's in my phone.  That's why.

16         Yes, the 17th works.  Thank you.

17         THE COURT:  All right.

18         The deadline for any written submissions, Mr. Gold,

19  is three weeks before.

20         And the government's response is due two weeks

21  before.

22         Please make sure to address and sequence your

23  arguments specifically to the 3553 factors and do it

24  sequentially.  If there are any guidelines arguments to be

25  made, please do them separately and subsequent to your 3553(a)

20233mmunozpf

1   arguments.

2           All right.  I understand the defendant is

3   incarcerated and there's no bail application at this time.

4   Correct?

5           MR. GOLD:  That's correct.

6           THE COURT:  All right.  The defendant, then, is

7   remanded.

8           Is there anything else I can do for anybody today?

9           Mr. Hoffman?

10          MR. HOFFMAN:  No, your Honor.

11          THE COURT:  Mr. Gold?

12          MR. GOLD:  No.  Thank you, your Honor.  Good to see

13  you.

14          THE COURT:  All right.  Thank you.

15                              ----

16

17

18

19

20

21

22

23

24

25