UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :

UNITED STATES OF AMERICA                          23 CR 150 (PMH)

                                        :

     - V. -

                                        :

ROMAN MUNOZ

                                        :

----------------------------------------X

                     SENTENCING SUBMISSION



Dated:     White Plains, New York
           November 22, 2023

                              Federal Defenders of New York
                              Benjamin Gold
                              Attorney for Roman Munoz
                              81 Main Street
                              White Plains, NY  10601
                              (914) 428-7124


To:  The Honorable Philp M. Halpern
     United States District Judge
     Southern District of New York


     Damian Williams, Esq.
     United States Attorney
     Southern District of New York
     One St. Andrews's Place
     New York, New York
     Attn:  Benjamin D. Klein
     Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, NY 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

Barry D. Leiwant
*Interim Executive Director
and Attorney-in-Chief*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 22, 2023

The Honorable Philip M. Halpern
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

   Re: United States v. Roman Munoz
     23 CR 150 (PMH)

Dear Honorable Halpern:

  Roman Munoz has always strived to help and please his family.  As detailed herein and in the accompanying exhibits, Mr. Munoz is a supportive father who constantly helps his children.  Additionally, he is supportive of his mother, his siblings, and, when he can, he is charitable in the community.  Of course, Mr. Munoz made a huge mistake – the biggest in his life – when he agreed to transport narcotics across the country.  But Mr. Munoz had no idea he was transporting fentanyl and he has otherwise lived a very respectable life.  Under these circumstances, and especially in light of his remorse and his age, I ask that the court impose a sentence of 36-months.

### *Mrs. Munoz's Childhood*

  Mr. Munoz was born on August 22, 1957 in Ameca, a city in Jalisco, Mexico. PSR ¶ 45.  He recalls the first eight years of his life fondly.  *Id.* ¶ 49.  He had four siblings and the family was supported by Roman Munoz Preciado, Mr. Munoz's father who worked in the fields cultivating crops.  *Id.*  Mr. Munoz's mother, Maria DeJesus Preciado-Ponce, took care of the home and, while not rich, the family had sufficient shelter and food.  *Id.*  But then when he was roughly eight everything changed.  *Id.* ¶ 49, P. 23.  Mr. Munoz's father was killed at the young age of 36.  *Id.* ¶ 45.  Rather than stay in their home, Mr. Munoz and his siblings were moved to their maternal grandparents' home and Mr. Munoz's mother started a new family with another man.  *Id.* ¶ 49.  Mr. Munoz's relationship with his mother changed drastically and the two stopped having regular contact, although they did reconnect years later.  *Id.*

At his grandparent's home, Mr. Munoz helped support his family by working in the fields, as a housekeeper or and as a masonry worker.  *Id.* ¶ 50.  The family was poor and could not afford to send Mr. Munoz to school, so he stopped attending school at age 12 and continued to work to support his family.  *Id.* ¶ 68.

***Adult Years***

Seeking a better future, at roughly 20 years old (in 1975) Mr. Munoz crossed the border into California.  *Id.* ¶ 52.  He found work in the agriculture sector in Castroville, California and shortly thereafter Mr. Munoz met Maria Soccoro Felix and the two became romantic and started a family.  *Id.* ¶ 52-53.  Two children were born: Roman Munoz Felix, who works in electronics and lives in Arizona and Ampelia Munoz Felix, who works at a restaurant and lives in Texas.  *Id.* ¶ 54.  Mr. Munoz and Ms. Felix separated after five years, but Mr. Munoz remains close to their two children, who are now in their 40s.  *Id.*

Mr. Munoz has three additional children.  Yesenia Munoz (35 years old) and Israel Munoz Estrada (27 years old) live in California and ███████████ (█ years old) lives in Arizona.  *Id.* ¶ 55-56.  Mr. Munoz maintains contact with all of his children and takes pride on having supported them through his various jobs.  *Id.* ¶ 54-56.  *See* Roman Munoz Letter (Exhibit A) ("I have always worked on the agricultural fields in California and Arizona. . . [and then I found employment] working as a truck driver moving fruits and vegetables and legumes."); Ener Ruiz Letter (Exhibit B) ("Even though we separated years ago, Roman has always stayed close to us and has been very responsible providing support for our son.").  As detailed by his daughter Yesenia, Mr. Munoz worked hard "in the fields and hauling produce as a truck driver" and, because of his hard work, she was "blessed with the best my parents could give me.  I had bikes, lots of Barbie's, Nintendo 64, beautiful dresses." Yesenia Gomez Letter (Exhibit C).  Mr. Munoz's youngest child explains, "My father has always been present in my life. . .  He would always make sure that I would have everything that I needed.". ███████ Letter (Exhibit D).

Mr. Munoz worked on farms and eventually becoming a supervisor.  *Id.* ¶ 34.  Then in 2007, Mr. Munoz became a truck driver.  *Id.* ¶ 75.  Through this work, Mr. Munoz transported crops throughout the country and was able to provide financial assistance to both his children *and* his extended family.  *See* Margarita Bravo Letter (Exhibit E) ("My brother is a good father, a good son, he has done many good things for us, for example, helping us financially not only our family but also our [83 year old] mother"); Maria Jesus Preciado Letter (Exhibit F) ("I write to you about my son Roman, he is a good human being and a good son.  He has always helped me economically"); Beatriz Bravo Letter (Exhibit G) ("[Mr. Munoz] was and still is a pillar of our family, he has functioned not only as an older brother but also as a father for us, and a great help to our mother.  Roman has always supported us financially and has given us his affection.").

Additionally, when able to, Mr. Munoz helps those in need.  Mr. Munoz's sister, Maria Bravo Preciado, explains, "He is charitable towards poor children, he likes to help a lot of the children at the Mexico border, and when he went to Mexico, he also liked to help poor and needy people," Maria Bravo Preciado Letter (Exhibit H).  *See also* Adriana Aguilera Letter (Exhibit I) ("He collects things for the children at the border, he helps senior citizens, and when it comes to our town, if he finds someone in dire need, he helps); Juan Munoz Letter (Exhibit J) ("My Brother has a great Spirit and helps others"); Anita Aguilera Letter (Exhibit K) ("Roman has always belonged to groups where he works as a volunteer to provide support like food, clothing, and shoes to the needy.  Another of Roman's qualities is that he always puts the needs of others before his own").  Mr. Munoz's brother Jose Candelario Bravo Preciado adds,

> I describe my brother Roman as a man of faith, because he helped people in Mexico with clothing and shoes.  He is a man of great perseverance; he was always seeking to reach his goals in life.  He was always responsible at work, I saw him here in the United States, how he did all his work thoroughly and on time.
>
> Jose Candelario Bravo Preciado Letter (Exhibit L).

### *The Offense and Acceptance of Responsibility*

Mr. Munoz worked for various companies until 2020, when he was laid off after catching COVID-19.  *Id.* ¶ 70-73.  After catching COVID-19, Mr. Munoz became quite sick and was unable to work for three months and was then laid off. Roman Munoz Letter (Exhibit A), PSR ¶ 70.  Unable to support himself or his family, Mr. Munoz found occasional work as a truck driver and began to explore the prospect of getting his own truck and becoming a self-employed truck driver. During this time period, Mr. Munoz could not find steady work and ultimately decided to take the easy way out and agreed to help transport drugs.  As explained by Probation, "Without minimizing his conduct, the defendant noted that his motivation was influenced by the anticipated monetary gain because he was unemployed at the time."  PSR ¶ 23.  Mr. Munoz then agreed to help transport drugs to New York in a commercial truck that also carried produce.  *Id.* ¶ 13-18. For his role, Mr. Munoz was to split $10,000 with his co-defendant.  *Id.* ¶ 16.  While Mr. Munoz knew that he was transporting drugs, he did not know the exact quantity or what type of drugs he was handling.  *See* Transcript, P. 29-32.  (ECF # 48).

Mr. Munoz was detained on May 2, 2022. *Id.* P. 1. While incarcerated, he has had no disciplinary issues and found work in the jail's kitchen. *Id.* ¶ 6-7. Mr. Munoz agreed to be prosecuted by information, waived discovery and did not file a single pre-trial motion. He pleaded guilty on March 22, 2023. *Id.* ¶ 3.[1]

### *The Most Appropriate Sentence: 36 Months Followed by Post Release Supervision*

As Your Honor is well aware, in selecting a sentence this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Id.* In *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. *See id.* at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

In this case, as recognized by Probation, Mr. Munoz is worthy of a variance. PSR P. 22.

A.  The Nature and Circumstances of Mr. Munoz's Conduct Do Not Compel Lengthy Incarceration. 18 U.S.C. § 3553(a)(1)).

In order to help alleviate his own financial desperation, Mr. Munoz agreed to help transport drugs across the country. He did not know the type of drugs and was not getting a percentage of the proceeds. Instead, he would be paid $10,000, which was to be split amongst Mr. Munoz and his co-defendant. This, of course, was unlawful and merits punishment. As detailed by Probation and agreed upon under the terms of the plea agreement, Mr. Munoz is facing an extremely high Guidelines range because the type of drugs he was transporting was especially dangerous (fentanyl) and the quantity of narcotics was large. PSR ¶ 38, P. 22. *See United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009) ("the law is settled that a defendant need not know the exact nature of a drug in his possession to violate [the Controlled Substance Act]"). But it is relevant and mitigating that Mr. Munoz was the driver, not the drug dealer who was getting rich off of the narcotics trade.

---

[1]

B.      Mr. Munoz's History and Characteristics Support Leniency. 18 U.S.C. § 3553(a)(1).

It has long been recognized that a defendant's history and characteristics is always "a central consideration in the fashioning of a just sentence." *United States v. Merritt*, 988 F.2d 1298, 1307 (2d Cir. 1993). As Judge Jed S. Rakoff so eloquently explained,

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006); accord *Gall v. United States*, 552 U.S. 38, 52, 128 S. Ct. 586, 598 (2007) ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue'" (quoting *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035, 2053 (1996)); *see also* 18 U.S.C. § 3661; U.S.S.G. §1B1.4 (sentencing court not limited with respect to the information concerning a defendant's background, character and conduct that it may consider for the purpose of imposing an appropriate sentence).

While Mr. Munoz certainly should not have agreed to help drug dealers transport deadly narcotics, Mr. Munoz's devotion to his family and friends is significant. Attached to this submission are twelve letters from various friends and family (Exhibits B-M), all attesting to Mr. Munoz's good character and his general selflessness and his willingness to help others. This selfless devotion to others is grounds for a significant variance. *See Rita v. United States,* 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring) ("Matters such as . . . charitable, or public service are not ordinarily considered under the Guidelines [but are] matters that § 3553(a) authorize the sentencing judge to consider."); *United States v. Serafini*, 233 F.3d 758, 773, 774 (3d Cir. 2000)(downward departure appropriate given the defendant's "generosity with his time as well as his money."); *United States v. Tomko*, 562 F.3d 558, 572 (3d Cir. 2009) (affirming variance to a sentence of probation due largely to the defendants "exceptional" charitable acts and good works); *United States v.*

Case 7:23-cr-00150-PMH  Document 64  Filed 11/22/23  Page 7 of 10

The Honorable Philip M. Halpern                                    Page **6** of **9**
United States v. Roman Munoz                    Sentencing Submission (November 20, 2023)

*Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming a sentence of three months incarceration and 24 months supervised release from a recommended guideline sentence of 60 months imprisonment based in part on the defendant's "charitable work, community service, generosity with time, and spiritual support and assistance to others"); See other cases upholding downward departure for good works: *United States v. Ali*, 508 F.3d 136, 150 & n.19 (3d Cir 2007); *United States v. Cooper*, 394 F.3d 172, 177, 178 (3d Cir. 2005); *United States v. Woods*, 159 F.3d 1132, 1136 (8th Cir. 1998).

Additionally, Mr. Munoz's excellent work history merits consideration. Since he was a young child, Mr. Munoz has worked a number of jobs in the agricultural fields, doing hard, manual labor without much remuneration. PSR ¶ 50, 52, 74. He continued this work truck driver delivering food from farms for many years. *Id.* ¶ 70-73.

Finally, Mr. Munoz's remorse – as demonstrated by his plea, his multiple apologies and successful "safety valve" proffer – are worthy of consideration and are separate grounds for a variance. *See* Juan Enrique Munoz Letter (Exhibit M) ("While I was surprised to hear of the misconduct, it comes as no surprise that he is ready to accept responsibility for his actions. . . . Roman Munoz expressed deep sense of remorse in making such a serious mistake."); PSR ¶ 23 ("he repeatedly apologized for his conduct"); Roman Munoz Letter (Exhibit A).

C.    <u>A Thirty-Six Month Sentence Would Reflect the Seriousness of the Offense and Promote Respect for the Law and Just Punishment and Provide Sufficient Deterrence. 18 U.S.C. § 3553(a)(2)(A).</u>

Mr. Munoz has never before spent time in prison. Because of his actions, he has been incarcerated for over a year and will face a lifetime of collateral consequences. Under these circumstances, and especially in light of her history and characteristics and his lengthy work history, the requested sentence would provide ample respect for the law and would provide sufficient punishment. *See United States v. Mateo*, 299 F. Supp.2d 201, 210 (S.D.N.Y. 2004) (beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal convictions, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement.).

    D.    <u>A Thirty-Six Month Sentence Would Provide Ample Deterrence and would
Sufficiently Protect the Public (18 U.S.C. §§ 3553(a)(2)(B) and (C).</u>


       Mr. Munoz has been specifically deterred.  Because of his conduct, Mr. Munoz
was arrested and has been jailed.  Mr. Munoz is remorseful and is understandably
furious that he has put himself in the situation where he may be separated from his
family and sent to prison for an extended period of time.  *See* Roman Munoz Letter
(Exhibit A) ("I ask forgiveness to you your Honor, to my family, to God, and to
society.  I know to make mistakes, in an instant you don't even realize and today I
ask myself, why, why . . . .  I want to apologize to society, my family, and to God for
my fault that I committed.  I also apologize to you, your Honor.").  Thus, Mr. Munoz
has clearly learned his lesson from this case.  *See e.g., United States v. Baker*, 445
F.3d 987, 992 (7th Cir. 2006) (affirming below-Guidelines sentence on government's
appeal, and approving of "the district court's finding that a prison term would mean
more to Mr. Baker than to a defendant who previously had been imprisoned")
(citing § 3553(a)(2)(A)–(B)); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D.
Wis. 2005) ("Generally, a lesser prison term is sufficient to deter one who has not
been subject to prior lengthy incarceration than is necessary to deter a defendant
who has already served serious time yet continues to re-offend.").

       Regarding general deterrence, research shows that a more severe sentence
does not lead to greater specific deterrence for individual defendants.  <u>See</u> The
Honorable Peggy Fulton Hora & Theodore Stalcup, *Drug Treatment Courts in the
Twenty-First Century: The Evolution of the Revolution in Problem-Solving Courts*,
42 GA. L. REV. 717, 724 (2008).  The same can be said for general deterrence.
Studies have proven that more severe sentences do not result in greater general
deterrence.  Michael Tonry, Purposes and Functions of Sentencing, 34 CRIME AND
JUSTICE REVIEW: A REVIEW OF RESEARCH 28-29 (2006) ("[I]ncreases in
severity of punishment do not yield significant (if any) marginal deterrent effects. . .
. Three national Academy of Science panels, all appointed by Republican
presidents, reached that conclusion, as has every major survey of the evidence.").  It
is the certainty of being prosecuted rather than the severity of punishment that
deters crime. <u>See</u> Nat'l Inst. of Just., Five Things About Deterrence, Jun. 6, 2016.
The fact that Mr. Munoz was arrested, jailed, prosecuted, convicted and sentenced,
will provide sufficient general deterrence; a term of more than three-years is not
required for an individual who, like Mr. Munoz, has otherwise lived a law abiding
life.

       Finally , by virtue of Mr. Munoz's age -- Mr. Munoz is 66 -- Mr. Mr. Munoz's
likelihood of reoffending is extremely low.

The Honorable Philip M. Halpern                                      Page **8** of **9**
United States v. Roman Munoz          Sentencing Submission (November 20, 2023)

*Data from the Sentencing Commission²*



E.   The Requested Sentence Would Not Create an Unwarranted Disparity (18 U.S.C. § 3553(a)(2)(A)(6)

While a thirty-six month would result in a sentence that is significantly reduced from Mr. Munoz's codefendant, Mr. Munoz, due to being 66-years old, is worthy of a significant variance.  A sentence close to the Guidelines could very well turn into a "life" sentence, which would be unreasonable given that Mr. Munoz's role in this offense was, relatively speaking, minor.  *See* PSR P. 23 (describing Mr. Munoz's role as "a transporter and not a 'shot caller' in the drug conspiracy'").

Additionally, when evaluating the proper sentence in this case, I ask that Your Honor not use the Judiciary Sentencing Information (JSIN) in deciding what would amount to an appropriate sentence in this case.  There are several problems with the JSIN tool that render its results misleading and statistically unreliable. As a general matter, JSIN presents an average term of imprisonment that is misleadingly skewed upward. JSIN, for example, accounts for "time served" sentences by calculating the number of months served prior to sentencing, even if the judge's intent was to impose a noncustodial sentence. Sentences with § 5K1.1 departures are excluded, while individuals with mandatory minimum prison terms – of which there are many for those charged with drug-related offenses – are included. Further, JSIN uniquely evades peer review. It relies on "dynamic" data that appears to be different from the static data the Commission provides to the public once annually.  See https://www.ussc.gov/guidelines/judiciary-sentencing-

---

² This illustration is from a United States Sentencing Commission Report titled *Report at a Glance: Recidivism and Federal Sentencing Policy.*  A copy of this report is attached as Exhibit N.

information.  Therefore, experts have not yet been able to measure its accuracy or replicate its results.

*   *   *

There is nothing to be gained by a draconian sentence in this case, especially in light of Mr. Munoz's tremendous work history and his devotion to his family.  I respectfully ask that the Court grant a significant variance.

Thank you for your consideration of this request.

Respectfully,

//s

Benjamin Gold
Assistant Federal Defender

cc:    Assistant U.S. Benjamin Klein