

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

November 29, 2023

**BY ECF & HAND**
The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

      Re:    ***United States v. Roman Munoz*, 23 Cr. 150 (PMH)**

Dear Judge Halpern:

      The Government respectfully submits this letter in advance of sentencing of the defendant, Roman Munoz. Munoz pled guilty to conspiracy to distribute methamphetamine and fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), which was a lesser included offense of the one-count Information in the captioned matter. His sentencing range under the 2023 United States Sentencing Guidelines is 108 to 135 months' imprisonment. Consistent with the recommendation of the Probation Office, the Government does not oppose a downward variance. For the reasons below, we believe that a sentence of at least 96 months' imprisonment would be sufficient but not greater than necessary to achieve the legitimate purposes of sentencing in this case.

**A.    Factual Background**

      This case arose from a DEA investigation of a drug trafficking organization ("DTO") with ties to Mexico. *See* Presentence Investigation Report ("PSR") ¶ 9. In April 2022, the DEA used a confidential informant ("CI") to arrange the purchase of approximately 10 pounds of methamphetamine for approximately $3,200 per pound, as well as an unspecified amount of heroin, from a member of the DTO ("CC-1"). PSR ¶ 9.

      On April 30, 2022, CC-1 told the CI that the narcotics would be brought from Arizona to the northeast on a truck. PSR ¶ 10. On May 1, CC-1 told the CI that the drugs would be arriving the next day in Pine Island, New York, which is located in Orange County. PSR ¶ 10.

      On May 2, the CI received a text giving the CI an address for a farm in Pine Island. PSR ¶ 11. The CI subsequently spoke to an individual, who told the CI that that he would meet the CI at the farm in a Volvo truck. PSR ¶ 11. Law enforcement officers gave the CI a recording device and about $40,000 in fake currency, which the CI took to the farm. PSR ¶ 12.

Hon. Philip M. Halpern
November 29, 2023
Page 2

After arriving at the farm, the CI saw a black Volvo tractor-trailer truck (the "Truck"). PSR ¶ 13. The CI approached the driver's side door and encountered Munoz. PSR ¶ 13. After a discussion, Munoz handed the CI a backpack containing narcotics, and the CI subsequently gave Munoz a bag with the fake buy money. PSR ¶ 13.

Shortly after the CI left, law enforcement officers went to the farm and approached the Truck. PSR ¶ 14. After opening the driver's side door, officers saw Munoz's co-defendant, Efrain Fernandez standing next to a bunk bed in the back. PSR ¶ 14. Immediately next to Fernandez, officers saw four cylinders wrapped in brown duct tape, each containing about one pound of methamphetamine. PSR ¶¶ 14-15. These cylinders also matched the narcotics the CI had gotten from Munoz. PSR ¶ 15. While searching the Truck, officers found sixteen additional packages containing methamphetamine in two cubbies. PSR ¶ 15. One of the cubbies also contained the fake buy money the CI had given Munoz and three packages containing a substantial quantity of United States currency. PSR ¶ 15.

While certain law enforcement officers approached the Truck, other officers went to an office at the farm, where they found Munoz. PSR ¶ 16. During a statement to law enforcement, Munoz stated that he and Fernandez were being paid a total of $10,000 for transporting narcotics to New York, and he and Fernandez would share the money evenly. PSR ¶ 16.

The narcotics recovered from the CI and the Truck were subsequently sent by the DEA to a lab, where they were tested and weighed. The lab results showed that the defendant had been transporting approximately 13,377.5 grams—that is, more than 29 pounds—of pure methamphetamine hydrocholride, as well as approximately 1,015.9 grams of fentanyl. PSR ¶ 18.

**B.      Procedural History and Guidelines Calculation**

On May 3, 2022, the defendant was charged by complaint with conspiring to distribute, and possessing with intent to distribute (1) 50 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 846 and (b)(1)(A), and (2) 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and (b)(1)(B). *See* Dkt. 1. He was presented before the Honorable Paul E. Davison and detained. *See* Dkt. 3.

On March 22, 2023, the defendant was charged in a one-count Information with conspiring to distribute, and possessing with intent to distribute (1) 50 grams and more of methamphetamine, and (2) 400 grams and more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). *See* Dkt. 40. He then pled guilty to the lesser included offense of conspiring to distribute, and possessing with intent to distribute (1) 5 grams and more of methamphetamine, and (2) 40 grams and more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). *See* Minute Entry, March 22, 2023.

As set forth in the plea agreement and the PSR, pursuant to U.S.S.G. § 2D1.1, the base offense level is 38 because the defendant was found in possession of approximately 13,377.5 grams of pure methamphetamine hydrochloride, and approximately 1,015.9 grams of a mixture

Hon. Philip M. Halpern
November 29, 2023
Page 3

and substance containing fentanyl. *See* PSR ¶ 25. Two points are deducted because the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of U.S.S.G. § 5C1.2. *See* PSR ¶ 26. While not reflected in the plea agreement or PSR, under the recently enacted 2023 version of the Guidelines, an additional two points are deducted pursuant to the "zero point" offender provision in Section 4C1.1.[1] Three points are then deducted for acceptance of responsibility. PSR ¶¶ 32-33. As a result, the final adjusted offense level is 31. With a Criminal History Category of I, the Guidelines range is 108 to 135 months' imprisonment.

**C.     Discussion**

    **1.  Applicable Law**

As the Court knows, the Sentencing Guidelines, while no longer mandatory, still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), courts must treat them as the "starting point and the initial benchmark" for sentencing proceedings, *id.* at 49.

After calculating the Guidelines range, the Court must consider the factors outlined in Title 18, United States Code, Section 3553(a), which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall v. United States*, 552 U.S. 32, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

---

[1] The Government has consulted with defense counsel, who agrees that this two-level reduction applies.

### 2. A Sentence of At Least 96 Months' Imprisonment is Appropriate in This Case

The Government respectfully submits that a below-Guidelines sentence of at least 96 months' imprisonment, which is consistent with the recommendation of Probation and the sentence that this Court imposed on the defendant's co-defendant, is sufficient, but not greater than necessary, to reflect the seriousness of the defendant's offense, the need to protect the public from further crimes of the defendant, and the need to assure general and specific deterrence.

*First*, the need for a substantial sentence is driven primarily by the seriousness of the underlying offense. The defendant was caught with a staggering amount of drugs. Absent safety valve relief, Congress determined that a mandatory minimum sentence of ten years' imprisonment is warranted for individuals who traffic in 50 grams of pure methamphetamine. The defendant in this case was caught trafficking over 13,377 grams—more than *two hundred and sixty-seven times* the amount that Congress deemed warrants a *minimum* term of 120 months. He was also caught with well over a kilogram of fentanyl, which itself is more than twice the amount that warrants a ten-year minimum. Given the applicability of the safety valve in this case, the Court need not sentence the defendant in accordance with these minimums. But the amount of narcotics that he was trafficking, and the unspeakable harms that these quantities of methamphetamine and fentanyl could cause to the community, plainly necessitate a significant sentence.

In this regard, it is telling that the defendant's Guidelines arguably understate the significance of his conduct. Under § 2D1.1, the Drug Quantity Table maxes out at an offense level of 38 when the converted drug weight is 90,000 kilograms or more. *See* § 2D1.1(c)(1). Here, as the plea agreement sets out, the defendant is responsible for a converted drug weight or more than 270,000 kilograms. In other words, if the defendant had just one third of the narcotics that he was caught with, his Guidelines would be exactly the same. That is also telling in considering the Judiciary Sentencing Information appended to the PSR, which notes that, from 2017 to 2021, defendants trafficking in methamphetamine with an offense level of 33 and a Criminal History Category of I receive an "average" sentence of 96 months and a "median" sentence of 108 months' imprisonment. *See* PSR p. 18. Here, the defendant was trafficking in more than triple the amount that would yield the same Guidelines, which points to a sentence on the higher end of the range. He was also caught trafficking in not just methamphetamine, but also fentanyl, which is an incredibly dangerous and deadly drug that favors a more substantial sentence.

*Second*, a significant sentence is warranted to protect the public. Drugs like methamphetamine and fentanyl destroy communities. As the Court knows, the country is struggling with an ongoing opioid addiction and abuse crisis, which all too often ends in death. Even miniscule amounts of fentanyl can be lethal. And this substance is regularly used to cut heroin and other narcotics, which is particularly deadly for unwitting end users. A substantial sentence is warranted in this case to protect the public from these substances.

*Third*, the need for general and specific deterrence counsel in favor of a substantial sentence. Although the defendant is in Criminal History Category of I, this is not his first conviction, and his prior contact with the criminal justice system was plainly insufficient to deter

Hon. Philip M. Halpern
November 29, 2023
Page 5

him from additional and serious misconduct. *See* PSR ¶ 36. A substantial sentence would also send a message to the community more broadly that this Court will not tolerate offenders who traffic in large-scale distribution quantities of deadly drugs.

*Finally*, while Section 3553(a) does not require the Court to consider sentencing disparities among co-defendants, a significant sentence is in line with the sentence that this Court imposed on the defendant's arguably less culpable co-conspirator. In particular, on August 29, 2023, this Court sentenced Efrain Fernandez, Munoz's co-defendant, to a term of 96 months' imprisonment for his participation in this offense. *See* Dkt. 62. As set out in the PSR, Fernandez's participation in the offense was quite similar to Munoz's. They both transported the drugs across the country. And they agreed to share the profits evenly. If anything, as set out above, Munoz is arguably the more culpable of the pair, given that he was the one who was interacting directly with the CI in connection with the delivery of narcotics.

To be sure, there are mitigating factors here as well. The Government understands that the defendant has substantial familial support, which is reflected in his sentencing submission. He also has relatively little criminal history, which, although already considered in his Guidelines calculation, may arguably support a downward variance for an older offender, such as the defendant. While the Government believes that these factors support a downward variance, they point more towards the "average" sentence of 96 months cited for similarly situated offenders in the PSR. The Government does not believe that they justify the extreme downward variance that the defendant seeks.

**D.      Conclusion**

For the reasons set forth above, consistent with the recommendation of the Probation Office, the Government does not oppose a downward variance in this case, and respectfully submits that a below-Guidelines sentence of at least 96 months' imprisonment would be sufficient but not greater than necessary to achieve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:   __/s/ Benjamin Klein_____
Benjamin D. Klein
Assistant United States Attorney
(914) 993-1908

cc:      Ben Gold, Esq. (by ECF)